312 So.2d 325 (1975)
STATE of Louisiana
v.
Sheila BROUSSARD and Cleavern B. Broussard.
No. 55681.
Supreme Court of Louisiana.
April 24, 1975.
Rehearing Denied May 30, 1975.
*326 Murphy W. Bell, Director, R. Judge Eames, App. Counsel, Baton Rouge, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., M. Stephen Roberts, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
A husband and wife, Sheila and Cleavern Broussard, were jointly charged in a bill of information with cruelty to a juvenile in that they "being over the age of seventeen (17), intentionally and through criminal negligence mistreated and neglected Viki (sic) Broussard, a child under the age of seventeen, whereby unjustifiable pain and suffering was caused to said child." La.R.S. 14:93. The child, then two years of age, is the child of Cleavern Broussard by a former marriage. A motion to suppress photographs taken of the child at the hospital and to strike the testimony of certain witnesses filed on behalf of both defendants was denied. A motion for a directed verdict of acquittal filed on behalf of the husband, Cleavern, at the close of the state's case in chief was also denied. The trial before the judge resulted in a verdict of guilty as to both defendants. Sentence of confinement in the parish jail for a period of one year was imposed on each. They appeal.

ASSIGNMENT OF ERROR NO. 1
Cleavern Broussard contends that the trial court erred in refusing to grant his motion for a directed verdict of acquittal, as there is no evidence in the record implicating him in the charge or any proof adduced at trial to show that he violated R.S. 14:93. He further argues that, since there is no evidence of his cruel mistreatment of his child, he cannot be adjudged guilty under R.S. 14:93 solely on the ground that he acquiesced in and condoned the severe beating administered in his presence, citing as authority State v. Towns, 222 La. 437, 62 So.2d 634 (1952).
The crime of cruelty to juveniles is defined in article 93 of the Louisiana Criminal Code. It recites in pertinent part:
Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child....
The state introduced the testimony of Mr. & Mrs. Bondi to show the defendant-father's participation in the intentional mistreatment of his child. Mrs. Bondi testified that she had witnessed the whipping and beating of Vicki by her stepmother, Sheila, on other occasions. The night of January 4, 1974 the Bondis were invited by the Broussards to play cards in the trailer-residence of the latter. During the course of the night, Mrs. Bondi observed Sheila go to the bedroom and heard her slap and strike the child. On the pretext of going to the bathroom, Mrs. Bondi went to the rear of the trailer and examined the body of Vicki. She saw whelps and bruises. Later, according to Mrs. Bondi, the child was brought to the living room and there slapped and beaten in the face by Sheila. According to Mrs. Bondi, Sheila *327 made it known that she was angered at the fact that the child was not then asleep and she intended to make Vicki walk the floor until six the next morning. The father, Cleavern, was then ordered by Sheila to move the playpen and make a path in the cluttered living room of the trailer so that she could have room to continue the beating while making Vicki walk the floor. He complied. Mrs. Bondi then testified:
Q. Now, didn't you testify that this, after this furniture was moved this was when Mrs. Broussard beat this child in the face for ten or fifteen minutes?
A. Right.
Q. Did you all know what was fixing to take place?
A. I did.
Q. And was Mr. Broussard there?
A. He was.
Q. And he moved the furniture for that purpose?
A. He walked in the living room, pushed the playpen over to the right side, and he walked back in the kitchen and looked like he was scared to death.
And thereafter:
Q. He stood there and watched it?
A. He stood there and watched
Q. And he moved the furniture so they'd have room for the beating, didn't he?
A. Right.
The testimony of Mr. Bondi corroborates that of his wife with respect to Cleavern's participation in the mistreatment of Vicki on that night. He also testified that the playpen was moved by Cleavern for the purpose of the mistreatment of Vicki. He stated:
A. But she was just making her walk, you know, back and forth, up and down in the living room, and was hitting her, holding her by the left arm and just picking her plumb off the floor.
This obviously occurred after the playpen had been moved by Cleavern. Mr. Bondi, as did his wife, testified that Sheila was hitting the child with full force and walking her at the same time. When asked why the child did not fall, he answered that Sheila was holding Vicki by the arm; she could not fall. Both Bondi and his wife testified that they became so upset at the beating of the child by Sheila and the father's action in furtherance thereof, they left.
The trial judge denied the motion for directed verdict of acquittal as to Cleavern for the reason that there was evidence that he aided and abetted in the beating of Vicki to the extent of moving the furniture so that she could be beaten and made to march up and down the room until the next morning.[1]
In our law, article 24 of the Louisiana Criminal Code, persons who aid and abet in the commission of a crime are guilty as principals although they do not directly commit the act constituting the offense.[2]
*328 From our appreciation of the record in this case, there is evidence to substantiate the conclusion that Cleavern aided and abetted in the cruel mistreatment of Vicki on the night of January 4, 1974. His participation was more than passive. He was aware of the intention of his wife to slap and strike this child while forcing her to walk up and down until morning. In furtherance of this criminal act, he moved the furniture in order to make a path for the occurrence of such criminal activity. Thus, a directed verdict of acquittal was properly denied. La.Code Crim.P. art. 778 (1966). Having found evidence that Cleavern Broussard aided and abetted in the cruel mistreatment of his child and was thus guilty as a principal, State v. Towns is not applicable to this case.

ASSIGNMENT OF ERROR NO. 2
Defendants sought to suppress photographs taken of Vicki at the hospital where she was brought for examination. These pictures depict the extent of the bruises on her face and body. Also complained of by defendants in this assignment of error is the refusal of the trial judge to strike the testimony of Dr. Hebert, who saw Vicki at the hospital and attended her; of the police officers (Lt. Ryals and Deputy Burks) who went to the defendants' trailer at the order of the assistant coroner, Dr. Rieger; and that of Aris Oliver, the Intake Supervisor at the Family Court Center of the Parish of East Baton Rouge, who instructed the officers to take the child to Earl K. Long Charity Hospital for examination.
Defendants contend that the "evidence was illegally seized and all the testimony concerning the same is inadmissible." Lack of a search warrant is the basis for the contention. Furthermore, defendants deny having given their consent to the search and examination of Vicki but, if so, claim that it was given under coercion. The state counters that the record clearly shows that defendants freely admitted the officers into their home and gave their permission for examination of the child.
To resolve this issue, a review of the record is necessary. Based upon information furnished by Dr. Rieger, assistant coroner, to investigate a complaint of child abuse, the police officers went to defendants' trailer. On the first visit (around 10 p.m. on Saturday, January 5, 1974), the officers did not see Vicki, as they did not have a complete description of the child in question. When they entered the trailer, they were shown one of the three children who was in the arms of Mr. Broussard. According to Lt. Ryals, permission to enter and examine this child was freely given. After finding no marks on the child, they left and reported back to Dr. Rieger for more specific information. Dr. Rieger instructed them to return and examine all three of the children in the Broussard home. Upon their return to the trailer (about 40 minutes later), they were invited back in. Sheila explained that the bruises on the body and face of Vicki were caused as a result of falls. After consultation with Miss Oliver of the Family Court Center, the officers returned to the trailer the next day (Sunday afternoon) and asked the Broussards to take Vicki to the hospital for an examination. The child was taken by the Broussards and Mr. Broussard's mother, followed by the deputies, to the Earl K. Long Charity Hospital where Vicki was admitted for examination.
Sheila Broussard testified that the police officers indicated they had an oral order to search the trailer and to take Vicki to the hospital for tests. Accordingly, she felt she had no other alternative except to comply. This is denied by Lt. Ryals who is adamant that the Broussards invited the officers into the trailer on each occasion and agreed to take Vicki to the hospital for an examination. Another person present at the time the officers visited the trailer Saturday night, Patricia Gill, testified that the Broussards permitted the officers to enter and examine the child.
*329 In our view, permission by the Broussards to the police officers to enter the trailer and investigate was freely granted on each occasion. Likewise, we find that the defendants consented to the subsequent examination of the child at the hospital. We reject the contention of coercion as being completely without substance. R.S. 14:403 provides for the reporting and investigation of the abuse and/or neglect of children. Having concluded that permission was freely and voluntarily given by the Broussards, the statute has no application here. Accordingly, the ruling of the trial judge denying the motion to suppress is correct. This assignment of error is without merit.

DECREE
For the reasons assigned, the convictions and sentences of these defendants, Sheila and Cleavern Broussard, are affirmed.
NOTES
[1] The reasons given by the trial judge are: Nevertheless, it's difficult to say that he should or could be convicted on the basis of acquiescence alone, but there is more than acquiescence here. I think that there is implied consent and there is evidence that on a certain night that he did at least to the extent aid and abet, when it became obvious what was going to happen that he aided and abetted to the extent of moving the furniture so that the child could be beaten and made to march up and down the room. So the verdict as to Cleavern Broussard is guilty as charged.
[2] La.R.S. 14:24 recites:

All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.